IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 7, 2004

## JOHN W. SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 99-C-2088     Cheryl Blackburn, Judge**

_____

**No. M2003-00729-CCA-R3-PC - Filed June 25, 2004**

_____

The petitioner, John W. Smith, appeals the denial of his petition for post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Ronald E. Munkeboe, Jr., Attorney, for the appellant, John W. Smith.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, who was on parole for a prior offense, acknowledged during a police investigation that he had been involved in the robbery of several businesses. His accomplice in the robberies was Daryl Kinnard. Indicted for one count of especially aggravated robbery and eleven counts of aggravated robbery, the petitioner entered pleas of guilt to one count of facilitation of especially aggravated robbery, for which he received a Range III sentence of twenty years, and three counts of aggravated robbery, for which he received concurrent Range III sentences of twenty years. Because the concurrent sentences for each aggravated robbery were ordered to be served consecutively to the sentence for facilitation of especially aggravated robbery, the effective sentence was forty years. Additionally, because the petitioner was on parole at the time of the offenses, the sentences were ordered to be served consecutively to the remainder of the existing term. There was no appeal.

Less than a year later, the petitioner filed a petition for post-conviction relief alleging that he had been denied the effective assistance of counsel. In support of his claim, the petitioner argued

that his confession to police had been coerced, that his arrest was illegal, and that his trial counsel had failed to either interview or produce three potential witnesses who could have established an alibi to the crimes charged. Counsel was appointed and, in an amendment to the petition, the petitioner detailed his allegations of ineffective assistance of counsel, contending that his trial counsel had communicated inadequately and had discouraged the petitioner from insisting upon a trial.

At the evidentiary hearing, the petitioner complained that his trial counsel had met with him only three or four times, excluding court dates, over a period of twenty-three months. He testified that trial counsel was made aware of the circumstances of his arrest but had refused to file a motion to suppress, explaining the trial judge would ultimately provide an unfavorable ruling. The petitioner contended that he chose to enter guilty pleas even though he had alibi witnesses when his trial counsel warned that he didn't "stand a chance anyway."

The transcript of the submission hearing established that the petitioner understood the nature of the twelve charges and the length of the possible sentences. After confirming that he was literate, the petitioner admitted during the submission hearing that he had discussed each of the charges with trial counsel, that he was aware of his right to call witnesses on his own behalf, and that he had no criticisms of the efforts trial counsel had made on his behalf. The transcript also established that the petitioner acknowledged pleading guilty because he was guilty, that he was not under the influence of any medication at the time of his guilty pleas, and that he fully understood that by entering a plea of guilt, he was waiving his right to testify in his own behalf or call witnesses in his defense, or otherwise challenge the case brought by the state.

The petitioner, who had acknowledged having been in prison during the seven years prior to the robbery charges, testified that two of the investigating officers had promised to "let me go . . . if I admitted involvement . . . ." He claimed that on the date and time of one of the charges to which there was a guilty plea, he was at his grandmother's house with his aunt, Frances Smith, his grandmother, and two cousins, Michelle Douglas and Karen Gwandua. On cross-examination, the petitioner acknowledged that during his questioning, which was videotaped, the investigating officers had informed him that he was not under arrest and free to leave at any time during the interview, thereby indicating a non-custodial interrogation. The petitioner recalled that in preparation for the trial, he had watched the videotape of his police interview in the presence of his trial counsel.

Frances Smith, the petitioner's aunt, testified that they were together at her residence between 8:00 and 10:00 P.M. on May 20, 1999, during the robbery that took place at Ken's Market. Ms. Smith conceded, however, that the market was within walking distance of her residence.

Karen Gwandua[1] testified that she was at the residence of her mother, Frances Smith, on May 20, 1999. She recalled that her four children, her grandmother, and her cousin, Michelle Douglas,

---

[1] At the time of the evidentiary hearing, Karen Gwandua was identified as Karen Gwandua-Hill.

were also present between 8:00 P.M. and 11:30 P.M. She stated that at about 10:00 P.M., she learned that "something had just happened at Ken's Market." Ms. Gwandua testified that the petitioner was in her presence from approximately 8:00 P.M. to 11:30 P.M. She was unable to testify to the whereabouts of the petitioner during any of the three other charges that had resulted in convictions.

Trial counsel, who appeared as a witness for the state, testified that he had reviewed the state's file at the office of the district attorney, that he had watched the videotape of the statement made by the petitioner and the petitioner's co-defendant, and that he had investigated each of the counts within the indictment as to date, time, and place. According to trial counsel, he was aware of the alibi witnesses the petitioner had identified as to the robbery of Ken's Market but had learned that their testimony would have pertained to the time period "shortly after the actual robbery." He testified that because of the close proximity of the market to the Smith residence, their testimony would have been as harmful as it might have been helpful. It was trial counsel's opinion that because the videotape had indicated that the petitioner was free to leave during the course of his interrogation and was advised that he did not have to answer any questions, there was no basis for a motion to suppress. Trial counsel confirmed that the testimony of the various victims corroborated the incriminating statement the petitioner had given the police. It was his recollection that the petitioner's co-defendant received a forty-year sentence with a 45% release eligibility. While conceding that the petitioner had maintained his innocence on several of the charges, trial counsel also pointed out that all but two of the charges had been dismissed by the state as a part of the plea agreement. It was trial counsel's opinion that the guilty pleas were knowingly and voluntarily entered by the petitioner. Trial counsel acknowledged advising the petitioner prior to the plea agreement that "his situation was grave." He was particularly concerned about the potential testimony of one of the victims, who had been blinded and paralyzed by a gunshot wound received during the course of one of the robberies.

At the conclusion of the evidentiary hearing, the post-conviction court ruled that neither Frances Smith nor Karen Gwandua would have been particularly helpful because their testimony would have placed the petitioner within two blocks of the crime scene at the time of the Ken's Market robbery. The post-conviction court also accredited the testimony of trial counsel and determined that because the petitioner was not in custody at the time of his interrogation by police and because his videotaped statement would have been allowed as proof of his guilt had the case been tried, the petitioner had not been prejudiced by the lack of a motion to suppress. It determined that even if trial counsel had met with the petitioner only three or four times prior to trial, excluding court dates, that alone was not enough to establish any deficiency on the part of trial counsel or any prejudice in the result. The post-conviction court also held that the petitioner, who was fully advised of the nature of the charges and the strength of the state's case, had made knowing and voluntary pleas of guilt. Observing that the petitioner had previous experience with the criminal justice system, actually having served a term in prison, the post-conviction court rejected the petitioner's claim that he had been unduly influenced by his trial counsel to accept the terms of the plea agreement offered by the state.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the guilty pleas and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 30 (1970). In Boykin v. Alabama, 395 U.S. 238 (1969), the Court ruled that defendants should be advised of certain constitutional rights, including the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. Id. at 243. If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992).

In our view, the evidence does not preponderate against the post-conviction court's finding that the petitioner received the effective assistance of counsel and that he entered knowing and

-4-

voluntary pleas of guilt. The petitioner has been unable to establish how more communication with his trial counsel might have been helpful, why a motion to suppress his videotaped statement would have been successful, or that the alibi defense as to one of the charges might have made a difference if that charge had proceeded to trial. Although there was some discrepancy as to whether the alibi witnesses first saw the petitioner shortly after the crime or claimed to have been with the petitioner at the actual time of the crime, it is apparent that the post-conviction court accredited the testimony of trial counsel and ruled that even if their testimony had been presented, its helpfulness would have been mitigated by the fact that it would also have established that the petitioner was in close proximity to the crime scene at the time of the crime. Courts must not second-guess tactical decisions which are based upon adequate preparation. In short, the petitioner has been unable to establish that his pleas were either unknowingly made or involuntarily entered or were the result of the ineffective assistance of counsel.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE